# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**TERRELLE D. OLIVER,**
       **Plaintiff,**

    **v.**                                  **Case No. 19-C-43**

**GREGORY FRIEDEL,**
**DREW WEYCKER,**
**CO HURT,[1]**
**COLIN FRUEBROHT,**
**JOSHUA GOMM,**
**ALEX BONIS,**
**ANTHONY MATUSHAK, and**
**JUSTIN MAHER,**
        **Defendants.**

---

## ORDER

Plaintiff Terrelle D. Oliver, a Wisconsin state prisoner representing himself, is proceeding on claims that the defendants violated his rights under the First and Eighth Amendments to the United States Constitution when he was confined at Green Bay Correctional Institution (GBCI). ECF No. 17. The defendants have filed a motion for summary judgment. ECF No. 31. The plaintiff has filed a motion to compel, a motion for summary judgment,[2] and a motion for leave to file exhibits. ECF Nos. 46, 48, 67. I will grant in part the defendants' motion for summary judgment, deny without prejudice the

---

[1] In the Screening Order, I determined that the plaintiff failed to state a claim against CO Hurt because, while Hurt was listed in the caption of the complaint, the plaintiff made no allegations against him. ECF No. 17 at 6. However, I inadvertently did not dismiss CO Hurt. Thus, this decision dismisses Hurt.

[2] The plaintiff's original motion for summary judgment is unsigned. ECF No. 48. The plaintiff subsequently filed a signed summary judgment motion, ECF No. 57, which serves as his signature page to the original motion.

plaintiff's motion to compel, deny the plaintiff's motion for summary judgment, and deny the plaintiff's motion for leave to file exhibits.

## I. MOTION TO COMPEL

On July 8, 2020, the plaintiff filed a renewed motion to compel discovery. ECF No. 46. He requests the following documents: (1) Department of Corrections (DOC) Executive Orders and work rules that staff must sign when accepting a DOC Job; (2) a copy of the contract/oath that DOC staff must sign when obtaining a DOC job; (3) all DOC work rules that staff must follow; (4) photos of the entrance area in the segregation building or "RHU" (restrictive housing unit); (5) photos of the cameras on the walls in the main area by the "bubble"; (6) photos of the beginning of the cell halls where inmates are housed, including the 200, 300 and 400 wings; (7) photos of the inside of the cell where inmates enter to be stripped down and searched after entering the RHU, and photos taken from inside of the cell toward the door; (8) all defendants' co-workers who were working with the defendants from July 1, 2018 through August 20, 2018 to be interviewed by video; (9) all PREA rules that officers must follow and what happens when an officer violates the rules; and (10) how many deaths and assaults have been committed by force by officers in RHU halls against inmates from January 1, 2007 through December 31, 2018.

The plaintiff says he submitted these requests to the defendants in April 2020, and again on May 22, 2020, but he has not yet received the documents other than his medical records and the RHU Handbook. The plaintiff says he made his third discovery request on May 22, 2020 and that it was therefore timely because the court had extended the discovery deadline to May 25, 2020. He also says that his discovery deadline would be thirty to forty-five days from the date that Governor Evers lifted his stay-at-home order,

2

pursuant to the Eastern District of Wisconsin General Order 20-8. The plaintiff states that he followed the court's direction to try to resolve discovery by sending defendants' counsel a letter dated June 20, 2020 to resolve the issue, but the defendants will not comply with the letter.

In response, the defendants state that they stand by their timely prior responses to the plaintiff's discovery requests, which includes 460 pages of documents. ECF No. 47. They also state that the plaintiff's third request for production of documents was untimely and that General Order 20-8 did not apply to the discovery deadline in this case by its own terms because a separate extension of that deadline was granted between March 13 and April 9.

By way of background, on March 24, 2020, Magistrate Judge William E. Duffin (the magistrate judge to whom this case was referred to address non-dispositive pretrial motions) reopened discovery for two months and set a new discovery deadline of May 25, 2020. ECF No. 27. On May 20, 2020, the plaintiff filed a motion to compel discovery in which he stated that the defendants did not produce documents from his first and second requests for production of documents. ECF No. 28. Judge Duffin denied without prejudice the plaintiff's motion to compel because he had not complied with Civil Local Rule 37 by trying to informally resolve the discovery dispute with the defendants before filing the motion. ECF No. 30. Judge Duffin noted that, though the defendants explained their objections in their response to his request for production of documents (*see* ECF No. 28-1), the plaintiff should contact defense counsel to get a better understanding of why the defendants objected to his requests. ECF No. 30 at 2. He also directed that, if

3

the parties could not resolve their discovery dispute and the plaintiff decided to re-file his motion to compel, he should be sure to comply with Civil Local Rule 37.

In the instant motion to compel, the plaintiff says that he seeks documents from his third request for production of documents that he submitted to the defendants on May 22, 2020. If the plaintiff is seeking new discovery, then the defendants are correct that the discovery request was untimely. As stated in the Scheduling Order, the discovery deadline means that parties must serve their requests at least thirty days before the deadline to allow the opposing party sufficient time under the rule to respond by the deadline. Since the discovery deadline was May 25, 2020, the plaintiff's third request for production of documents that he submitted to the defendants on May 22, 2020 was untimely, if they were new discovery requests.[3] But the plaintiff says that he previously submitted these discovery requests to the defendants in April 2020. Thus, it appears that the plaintiff's May 22 discovery request was not untimely but, rather, was a follow up to requests he already made. I cannot conclude that the discovery requests were untimely.

However, the plaintiff has submitted proposed findings of fact in support of his motion for summary judgment and in response to the defendants' proposed findings of fact that cite to his declarations. The plaintiff's declarations describe his version of the events that give rise to his claims and they are evidence at summary judgment. Most, if not all, of the discovery the plaintiff seeks in his motion to compel is overbroad and/or not relevant to his claims. For example, evidence related to DOC work rules, photos of

---

[3] The defendants are correct that General Order 20-8 does not apply to extend the defendant because Judge Duffin extended the discovery deadline on March 24, 2020. *See* ECF No. 46-1 at 4; Gen. Order 20-8 at 2, ¶ 3.

4

cameras, photos of the inside of cells, interviews of the defendants' co-workers, PREA rules, and the numbers of deaths and assaults that RHU officers committed between 2007 and 2018 are not relevant to the plaintiff's claims. As explained in this decision, the plaintiff has overcome summary judgment as to some of his claims based on his declarations. I will therefore deny the plaintiff's motion to compel.

## II. FACTUAL BACKGROUND

The plaintiff was permitted to proceed on the following claims: (1) an Eighth Amendment claim against Officer Maher for touching him sexually during a search on July 31, 2018; (2) Eighth Amendment claims against Sergeant Friedel and Officer Maher for putting him into a dirty cell on that date; (3) Eighth Amendment claims against Sergeants Friedel and Weycker and Officers Maher, Gomm, Matushak, and Fruehbrodt for denying him cleaning supplies in early August 2018; (4) an Eighth Amendment claim against Officer Matushak for staring at him during a clothing exchange on August 2, 2018; (5) Eighth Amendment claims against Sergeant Weycker and Officers Gomm and Fruehbrodt for denying him his pain medication when he asked to make a PREA call, and then sexually harassing him over the intercom when he asked about his medication, on August 4 or 5, 2018; (6) a First Amendment retaliation claim against Officers Gomm and Matushak for issuing him a conduct report on August 8, 2018; and (7) an Eighth Amendment claim against Officer Bonis for touching him sexually during an August 13, 2018 search. Defendants' Proposed Findings of Fact (DPFOF), ECF No. 33, ¶ 1.

### A. Exhaustion

The plaintiff filed no inmate complaints related to Claims 1 or 4, as enumerated above. DPFOF, ECF No. 33, ¶ 2. According to the plaintiff, due to a change in policy,

inmates were only allowed to file one inmate complaint per week. Plaintiff's Response to Defendants' Proposed Findings of Fact (Pl. Resp. DPFOF), ECF No. 53, ¶ 2.

**B.    The Merits[4]**

1.    <u>Claim 1 – Maher</u>

On July 29, 2018, the plaintiff was issued Adult Conduct Report No. 3141210 for soliciting an employee and disobeying orders. DPFOF, ECF No. 33, ¶ 4. The plaintiff arrived in GBCI's Restrictive Housing Unit (RHU) on the morning of July 31, 2018.[5] DPFOF, ECF No. 33, ¶ 6. When an inmate arrives at the RHU, he must be strip searched for contraband, but Maher does not recall searching the plaintiff that day. DPFOF, ECF No. 33, ¶ 7. According to the plaintiff, Officer Maher strip searched him in a sexually harassing manner based on how he looked at the plaintiff when he was naked. Pl. Resp. DPFOF, ECF No. 53, ¶ 9. The plaintiff says that Officer Maher unnecessarily made him bend over, spread, and cough multiple times. *Id.*

2.    <u>Claim 2 – Friedel and Maher</u>

When Sergeant Friedel learned the plaintiff was being transferred to the RHU, he randomly assigned the plaintiff to a vacant cell (Cell 327), as he does with all inmates being transferred to the RHU. DPFOF, ECF No. 33, ¶ 11.

---

[4] As explained below, the plaintiff failed to exhaust his administrative remedies as to Claims 1 and 4. I include facts related to the merits of Claims 1 and 4 to provide context for the plaintiff's remaining claims.

[5] The plaintiff alleged in the complaint that Maher searched him on July 30, 2018, but he now says this was an error and that Maher searched him on July 31, 2018. Pl. Resp. DPFOF, ECF No. 53, ¶ 5.

6

According to the plaintiff, when Officer Maher placed him in the cell, the plaintiff instantly smelled a strong odor of feces and urine. Oliver Decl., ECF No. 51 at 3, ¶ 4. The plaintiff states that "the toilet was disgusting with piss, shit and white stuff like spit or even sperm." *Id.* He describes a "name spelled in shit on the side of the toilet and even the shower that they have inside the cell smelled of piss like someone just been pissing in the drain." *Id.* The plaintiff also says that there was "shit on the wall." *Id.* He states that his mattress was deteriorating, and the top layer of the mattress was "flaking all over," and you could tell it was not disinfected because it stunk. *Id.* The door to the cell had "food, dirt, shit, piss caked up that haven't been clean[ed] in years." *Id.* The plaintiff says that seconds after he was placed in the cell, he told Maher the cell was filthy and that he wanted to be moved or wanted some cleaning supplies. Pl. Resp. DPFOF, ECF No. 53, ¶ 15; Oliver Decl. at 2-3, ¶¶ 3-4. Officer Maher stated that he would tell the sergeant. Pl. Resp. DPFOF, ECF No. 53, ¶ 15. The plaintiff states that the cell had "fruit fly like bugs flying around, red ants all over the floor crawling on the floor, on me as I slept[.]" ECF No. 51 at 4, ¶ 4.

According to the defendants, Sergeant Friedel did not assign the plaintiff to a dirty cell. DPFOF, ECF No. 33, ¶ 12. They state that, although records are not kept for each cleaning, RHU cells are cleaned whenever an inmate is removed, usually within eight hours, before another inmate is moved into the cell. DPFOF, ECF No. 33, ¶ 13. With regard to Maher, the defendants state that if the plaintiff had complained to Officer Maher that his cell was dirty, Officer Maher would have informed his sergeant, placed the plaintiff in another cell or a holding cell, and inspected the plaintiff's assigned cell for cleanliness.

7

DPFOF, ECF No. 33, ¶ 15. If the plaintiff's cell was dirty after an inspection, Officer Maher would have had the cell cleaned. *Id.*

3.    Claim 3 – Friedel, Weycker, Maher, Gomm, Matushak, and Fruehbrodt

According to the defendants, the plaintiff, like all RHU inmates, was offered cleaning supplies during second shift between 6:15 p.m. and 6:45 p.m. on Tuesday, July 31, 2018. DPFOF, ECF No. 33, ¶ 16. The defendants state that if the plaintiff had claimed his cell was soiled with bodily fluids or feces, they would either have gotten him cleaning supplies or had the plaintiff's cell cleaned after an inspection. DPFOF, ECF No. 33, ¶ 17.

The plaintiff disputes this. He says that he was placed in Cell 327 at 9:00 a.m., and he begged all morning, afternoon, and evening for cleaning supplies, which he never received. Pl. Resp. DPFOF, ECF No. 53, ¶ 16. The plaintiff says that he told the defendants he needed cleaning supplies. Pl. Resp. DPFOF, ECF No. 53, ¶ 17. According to the plaintiff, a few days after he was placed in the cell, Matushak sprayed "some cheap mix of virex and bleach from the tray toward my toilet then put two rags in a bucket and threw them on the cell floor." Pl. Proposed Findings of Fact (PPFOF), ECF No. 50, at 5. He says that he "hit the toilet and sink with one rag and after tried to clean under the toilet but it was sticky." *Id.* He was unable to clean the feces from wall because it was hard. *Id.* The plaintiff testified in his deposition that his cell was finally cleaned on August 8, after he went to the Health Services Unit and complained to Captain VanLanen. Telephonic Deposition of Terrelle Oliver (Pl. Depo.), ECF No. 45 at 19:21-25.

4.    Claim 4 – Matushak

The plaintiff alleges that Officer Matushak stared at his naked body during a clothing exchange. Officer Matushak does not recall staring at the plaintiff during a

8

clothing exchange on August 2, 2018. DPFOF, ECF No. 33, ¶ 18. The defendants state that if Officer Matushak had conducted a clothing exchange of the plaintiff, he would have followed the standard procedures—which do not involve staring at the inmate—and would not have stared at him in a sexual way. DPFOF, ECF No. 33, ¶ 19.

     5.    <u>Claim 5 – Weycker, Gomm, and Fruehbrodt</u>

The plaintiff alleges that Sergeant Weycker and Officers Gomm and Fruehbrodt denied him his pain medication after he asked to make a PREA call, and then sexually harassed him over the intercom when he asked about his medication.

According to the plaintiff, on August 4, 2018, he was not given his medication and he knew that Gomm and Fruehbrodt were working and were probably in the "bubble." PPFOF, ECF No. 50, at 6. He hit his buzzer, the officer said, "what's your emergency," and the plaintiff said he did not get his medication. *Id.* The plaintiff says that the officer came back on and said, "so you like to go on your knees and suck dick, if I bend you over and fuck you in the ass and put more shit on the wall." *Id.* According to the plaintiff, on August 5, 2018, he rang his buzzer to make a PREA call and "Gomm, Fruehbrodt, and Sergeant Weycker denied me my pain medications the doctor prescribed to me to reduce my pain intentionally interfering with [my] doctor prescribed medication causing unnecessary chronic pain in [my] back, neck, knees, head." *Id.*

The plaintiff does not know with whom he spoke, and he claims that the person simply told him they would have someone bring him his medication (not any sexual comments), and that the medication he was calling about was Vitamin D, Ibuprofen, and an asthma inhaler, but that he had no breathing problems at the time. DPFOF, ECF No. 33, ¶ 25. The defendants state that Sergeant Weycker and Officers Gomm and

9

Fruehbrodt did not sexually harass Plaintiff over the intercom or deny him the ability to make a PREA call on August 4 or 5, 2018. DPFOF, ECF No. 33, ¶ 26. They state that the PREA investigation, with which the plaintiff refused to cooperate, found his claim to be unfounded. DPFOF, ECF No. 33, ¶ 27.

According to the defendants, Sergeant Weycker's duties did not include passing out medication, so he would not have had the opportunity to deny the plaintiff his medication. DPFOF, ECF No. 33, ¶ 20. The defendants also state that Officers Gomm and Fruehbrodt did not deny the plaintiff his medication on August 4 or 5, 2018. DPFOF, ECF No. 33, ¶ 21. If the plaintiff had requested his medication outside of regular medication pass times, i.e., by contacting the officers in the bubble via his emergency intercom, Sergeant Weycker would not have been involved in the call, and Officers Gomm and Fruehbrodt, if they had answered such a call, would have brought it to a range officer's attention and logged it. DPFOF, ECF No. 33, ¶ 22.

6.    <u>Claim 6 – Gomm and Matushak</u>

The plaintiff alleges that Gomm and Matushak issued him a retaliatory conduct report on August 8, 2018. According to the plaintiff, on August 8, 2018, after Matushak and Gomm heard that the plaintiff was documenting in notes everything that RHU staff were doing to him, they went to his cell to read his notes under the pretext of conducting a cell search. PPFOF, ECF No. 50 at 6. The plaintiff says they scattered his notes and retaliated in that Matushak issued the plaintiff a conduct report for saving from breakfast a ½ ounce package of jelly, a ½ ounce package of peanut butter, and a small salt packet. *Id.* The plaintiff says that there is a policy against having these items in his cell, but it is

10

not usually enforced because prisoners are allowed to order $42.00 worth of food items weekly. PPFOF, ECF No. 50, at 6-7.

According to the defendants, Officer Gomm had nothing to do with Adult Conduct Report No. 3006438. DPFOF, ECF. No. 33 ¶ 28. They say that Officer Matushak wrote the conduct report based on his search of the plaintiff's cell, which revealed contraband, not out of retaliation for anything. DPFOF, ECF No. 33, ¶ 29. The defendants state that possession of condiment packets is disallowed in the RHU and is commonly punished via conduct report, because condiment packets are sometimes used for passing more serious contraband, such as drugs, and they can also attract insects. DPFOF, ECF No. 33, ¶ 31.

It is undisputed that the plaintiff admitted guilt, and Lieutenant Cole found him guilty. DPFOF, ECF No. 33, ¶ 30. The plaintiff says he was given thirty days' "bag meals" for the conduct report disposition and that he had to get down on his knees in the dirty shower to receive his meals. PPFOF, ECF No. 50, at 7.

7.    Claim 7 – Bonis

The plaintiff filed an inmate complaint (GBCI-2018-17246) alleging that Officer Bonis sexually assaulted him during a pat search on August 9, 2018. DPFOF, ECF No. 33, ¶ 32. The plaintiff claims Officer Bonis cupped his private parts over his clothes during a pat search, caressed his chest and arms, and "slowly went over his buttocks, then grabbed his whole penis from the back." DPFOF, ECF No. 33, ¶ 33; Pl. Resp. DPFOF, ECF No. 53 ¶ 33.

Officer Bonis denies sexually assaulting the plaintiff. DPFOF, ECF No. 33, ¶ 34. He does not specifically recall escorting the plaintiff to recreation on August 9, 2018, but

11

if he had, he says he would have conducted a standard, professional pat-down, as required. DPFOF, ECF No. 33, ¶ 36.

### III. DISCUSSION

**A.    Summary Judgment Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**B.    Exhaustion of Administrative Remedies**

The defendants contend that the plaintiff failed to exhaust his administrative remedies for Claims 1 and 4 because he did not file inmate complaints regarding those claims. ECF No. 32 at 4. They also contend that the plaintiff did not exhaust Claim 5 as against Sergeant Weycker, because he specifically alleged that Officers Gomm and Fruehbrodt (not Weycker) made the comments. *Id.* The plaintiff does not deny that he failed to file an inmate complaint regarding Claims 1 and 4, but he says that inmates were only allowed to file one inmate complaint per week. Pl. Resp. DPFOF, ECF No. 53, ¶ 2.

The Prison Litigation Reform Act (PLRA) provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006)

12

(holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). Before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code § DOC 310.06(1). To use the ICRS, an inmate must file a complaint with the institution complaint examiner (ICE) within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.07(2). Complaints submitted later than fourteen days after the event may be accepted for good cause. *Id*. The ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§ DOC 310.10(9) & 310.10(12). An inmate may appeal the reviewing authority decision to the corrections complaint examiner (CCE). Wis. Admin. Code § DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the DOC who shall affirm or dismiss the CCE's recommendation or return the appeal to the CCE for further investigation. Wis. Admin. Code §§ DOC 310.12(9); 310.13(2).

13

Under the ICRS, an inmate may not file more than one inmate complaint per week. Wis. Admin. Code § DOC 310.07(7). However, the plaintiff's Claims 1 and 4 both arguably fall under the exceptions to the ICRS filing restriction because the claims relate to inmate health and personal safety and/or they involve complaints made under the Prison Rape Elimination Act (PREA). *See* Wis. Admin. Code § DOC 310.07(7). The plaintiff does not state that he tried submitting an inmate complaint. And even if the plaintiff had submitted an inmate complaint that was rejected under § DOC 310.07(7), he could have submitted a late inmate complaint (more than fourteen days after the occurrence giving rise to the complaint) and requested that it be accepted for good cause. *See* Wis. Admin. Code § DOC 310.07(2). The plaintiff did not file any inmate complaint regarding Claims 1 and 4, yet administrative remedies were available to him. He has therefore failed to exhaust his administrative remedies as to Claims 1 and 4, and these claims will be dismissed without prejudice.

The defendants also contend that the plaintiff failed to exhaust Claim 5 as against Sergeant Weycker because he specifically alleged that Officers Gomm and Fruehbrodt made the sexually harassing comments over the intercom. However, the ICRS does not require that officers be named in an offender complaint; rather, it requires that each complaint contain "only one clearly identified issue." Wis. Admin. Code § DOC 310.07(5). Sergeant Weycker is not alleged to have been involved in that portion of the plaintiff's Claim 5 that involves making sexually harassing comments over the intercom, so this issue appears to be moot.[6] In any event, the defendants have not shown that the plaintiff

---

[6] I cannot read the defendants' exhibit that cites to the plaintiff's inmate complaint because the writing is too light.

14

was required to exhaust specifically as to Sergeant Weycker as it relates to Claim 5's allegations about sexually harassing comments.

Finally, on February 25, 2021, the plaintiff filed a motion for leave to file exhibits. ECF No. 67. He says that at his recent settlement conference before a magistrate judge, the defendants lied and said he failed to exhaust his administrative remedies. *Id.* The plaintiff requests that he be allowed to submit exhibits, including copies of some of his ICRS complaints and appeals, and he submits forty-three pages of exhibits along with his motion. ECF No. 67-1. The plaintiff's request is untimely. Summary judgment has been fully briefed since July 2020. The defendants included their exhaustion argument in their summary judgment motion, and the plaintiff filed a response to the motion.[7] Moreover, the plaintiff's forty-three pages of exhibits do not show that he exhausted his administrative remedies as to Claims 1 and 4. The exhibits are copies of the ICRS documents the defendants filed along with their motion for summary judgment. He also filed ICRS documents for two other inmate complaints: 1) GBCI-2018-19681, that complains of no cameras in the hallway, and 2) GBCI-2018-21890, that complains of failure to provide mental health treatment. Thus, even if I allowed the plaintiff's exhibits, they would not affect my decision on regarding Claims 1 and 4. I will therefore deny the plaintiff's motion for leave to file exhibits.

C.    **Merits of Claims 2 and 3**

To establish a constitutional violation with respect to prison living conditions, an inmate must be able to demonstrate both: (1) the conditions were so adverse that they

---

[7] The plaintiff's motion to compel did not seek any discovery related to the issues of exhaustion of administrative remedies.

deprived him "of the minimal civilized measure of life's necessities" (the claim's objective prong) and (2) the defendant acted with deliberate indifference with respect to the conditions (the claim's subjective prong). *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994)). The necessities of life include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987)). Although "extreme deprivations are required," *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001), and "routine discomfort[s]" do not suffice, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), "[s]ome conditions ... may establish an Eighth Amendment violation in combination when each alone would not do so," and other conditions that may not be sufficiently serious for a short period of time, "can become an Eighth Amendment violation ... if endured over a significant time." *Gray*, 826 F.3d at 1005 (citations omitted). "Deliberate indifference ... means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773. Establishing that an official acted negligently does not suffice. "Instead, the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Id.*

Claim 2 is based on the plaintiff's allegation that he was placed into the dirty cell and Claim 3 is based on allegations that the defendants would not give him cleaning supplies. The plaintiff's description of the cell which included a disgusting toilet with "piss, shit and white stuff" on it and a "name spelled in shit on the side of the toilet," feces smeared on the cell wall, "food, dirt, shit, piss caked up" in the door to the cell, a

16

deteriorating and dirty mattress, red ants all over the cell floor that crawled on him at night, and no cleaning supplies, satisfies the objective prong. *See Gray*, 826 F.3d at 1005; *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007).

The defendants concede that the plaintiff has shown a genuine issue of material fact as to Claim 3. ECF No. 55 at 3. According to the plaintiff, he was placed in the cell on July 31, 2018, he repeatedly asked the defendants for cleaning supplies beginning seconds after he was placed in the cell, and the cell was not cleaned until August 8, 2018. The defendants, on the other hand, state that if the plaintiff had told them his cell was soiled with bodily fluids and/or feces, they would have given him cleaning supplies or had the cell cleaned. I cannot resolve Claim 3 on summary judgment. Thus, Claim 3 against defendants Friedel, Weycker, Maher, Gomm, Matushak, and Fruehbrodt survives.

To the extent that Claim 2 is based on Maher's placement of the plaintiff in the cell, this claim is the same as Claim 3 because the plaintiff says that seconds after Maher placed him in the cell, he told Maher the cell was dirty and asked to be moved or to have the cell cleaned. It is undisputed that Sergeant Friedel assigned the plaintiff to Cell 327, but the record does not support a reasonable finding that Friedel knew the cell was dirty when he assigned it. Friedel was not present when the plaintiff entered the cell. Thus, while the plaintiff may proceed against both Maher and Friedel under Claim 3 for not moving him from the cell or having the cell cleaned after he was placed there, there is not a separate claim against Maher or Friedel based on the plaintiff's assignment to the cell. Thus, I will grant the defendants' motion for summary judgment as to Claim 2.

**D. Merits of Claim 5 - Weycker, Gomm, and Fruehbrodt**

17

The defendants contend that the plaintiff has not shown that any particular defendant is personally responsible for him allegedly not receiving his medication. ECF No. 55 at 4. They also state that the plaintiff has not disputed that none of the defendants he accuses of harassing him over the intercom or denying him medication were working in the control center at the relevant time, and he admitted he does not know with whom he claims to have spoken. *Id.* According to the defendants, because the plaintiff has no evidence showing personal involvement in the alleged constitutional violations by any defendant, Claim 5 should be dismissed. *Id.*

The plaintiff cannot proceed against defendants Weycker, Gomm, and Fruehbodt because it is undisputed that he does not know who denied him his medication and who made the offensive comments over the intercom. The plaintiff thinks that he was denied his medication after he asked to make a PREA call regarding Officer Matushak's actions on August 2, 2018 (his dismissed Claim 4). But at the summary judgment stage, the plaintiff must provide evidence that would support a finding in his favor on his claim. The plaintiff has not submitted such evidence regarding Claim 5.

Even if the plaintiff did not get some of his medication on August 4 and 5, 2018, it appears that he only missed one or two of the 600 mg Ibuprofen doses. At his deposition, the plaintiff testified that he is prescribed 600 mg of Ibuprofen three times daily for chronic pain and that he missed his morning Ibuprofen medication as well as his Vitamin D medication. The plaintiff thinks he went around eight hours without receiving his Ibuprofen medication. While the unnecessary suffering of pain by withholding doctor-prescribed medication can support an Eighth Amendment deliberate indifference claim, in this case the plaintiff has not shown that his missed medication was attributable to any particular

18

defendant or that that the approximate eight hours he went without his Ibuprofen was a deprivation sufficiently serious to violate the Eighth Amendment. Thus, I will grant the defendants' motion for summary judgment regarding the missed medication. *See West v. Millen*, 79 F. App'x 190, 193-94 (7th Cir. 2003) (citing *Zentmyer v. Kendall Cty.*, 220 F.3d 805, 811-12 (7th Cir. 2000) (an occasional missed dose of medicine, without more, does not violate the Eighth Amendment).

As for the alleged sexually harassing comments, the plaintiff admits he does not know who made the comments to him over the intercom. The defendants deny making the comments. Given that the defendants were not working in the bubble at the time the plaintiff says the comments were made, a reasonable jury could not conclude that they made the comments. In any event, the guard's comments, while deplorable, do not rise to the level of a constitutional violation.

One-time gestures or verbal harassment by a prison official are rarely enough by themselves to implicate a constitutional right. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("[S]imple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). *See also Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009) (holding that guard's act of hanging noose in view of black inmates did not rise to level of constitution violation because, "harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment. Nor does it inflict injury comparable in gravity to failing to provide a prisoner with adequate medical care or with reasonable protection against the violence of other prisoners.").

19

On the other hand, depending on the circumstances, a prison official may violate the Eighth Amendment by engaging in conduct intended to inflict psychological pain on a prisoner. *See, e.g., Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (strip search of inmate violates Eighth Amendment if it is "maliciously motivated, unrelated to institutional security, and hence totally without penological justification," and is "conducted in a harassing manner intended to humiliate and inflict psychological pain"). For example, in *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015), a guard allegedly displayed his own penis to the plaintiff on multiple occasions and made repeated sexual comments to the plaintiff that implied the plaintiff was homosexual. The court of appeals found that when this behavior by the guard was considered along with plaintiff's allegations that other inmates harassed him by calling him names such as "punk, fag, sissy, and queer," it was sufficient to state an Eighth Amendment claim at the pleading stage. *Id.* Specifically, the court reasoned that the guard's behavior may have caused the plaintiff severe psychological harm and increased the likelihood of sexual assaults on the plaintiff by other inmates. *Id.* Likewise, in *Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019), a nurse who taunted and encouraged an inmate known to be suicidal and in the midst of a mental health crisis to take his own life went beyond "simple verbal harassment" and rose to the level of cruel and unusual punishment violative of the Eight Amendment. The court acknowledged, however, that its holding was narrow and that, while "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners," the Eighth Amendment can apply to an extreme case where medical staff use an inmate's known psychological vulnerability to cause psychological anguish. *Id.* at 719. In this instance, the officer's comments to the plaintiff over the intercom are

20

distinguishable from the conduct in *Beal* and *Lisle* and do not rise to the level of cruel and unusual punishment.

**E.     Merits of Claim 6 – Retaliation Claim against Gomm and Matushak**

At the summary judgment stage, the plaintiff has the initial burden to make out a *prima facie* case of retaliation by showing that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). If the plaintiff makes this showing, the defendants must show that the adverse action would have occurred anyway. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013); *see also Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011) (if inmate meets all three elements, burden shifts to show that officers would have taken the same actions "even in the absence of protected conduct"). If the defendants meet this burden, then the plaintiff must show that their proffered reason was pretextual—in other words, a lie—and that the real reason was retaliatory animus. *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012).

The plaintiff's retaliation claim is based on allegations that Officers Gomm and Matushak issued him a conduct report for keeping unauthorized items in his cell in retaliation for his documenting in notes his experiences in the RHU.

It is undisputed that while Officer Gomm participated in the cell search, he did not write the conduct report. Since Officer Gomm did not take part in writing the conduct report, he is not liable. As for Officer Matushak, he issued the plaintiff the conduct report after he found contraband in the plaintiff's cell. The plaintiff has offered no evidence to support a finding that Officer Matushak issued the conduct report to retaliate against the

21

plaintiff for the notes he was keeping in his cell. Retaliation requires a showing that the plaintiff's conduct was a motivating factor in the defendant's conduct. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). The plaintiff admitted that he was guilty of the offense and he was found guilty at the disciplinary hearing. Also, he has not offered evidence that the charges to which he admitted guilt are not routinely enforced.[8] The plaintiff's speculation regarding Officer Matushak's motive does not overcome the evidence that Matushak wrote the conduct report because he found contraband in the plaintiff's cell. *See Devbrow v. Gallegos*, 735 F.3d 584, 587-88 (7th Cir. 2013) (citing *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (speculation concerning retaliatory motives cannot create a genuine issue of material fact); *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001)). I will therefore grant the defendants' motion for summary judgment as to Claim 6.

## F.     Merits of Claim 7 – Sexual Assault Claim against Officer Bonis

At his deposition, the plaintiff testified that Officer Bonis conducted a pat search before he removed the plaintiff from the segregation unit so that he could attend recreation. Oliver Dep. at 37, ECF No. 45. The plaintiff described the search as follows: "Officer Bonis started the pat search with one of his hands on me. He went down my chest and my back and everything. He went down my ass, my butt cheeks. Then he -- he

---

[8] The plaintiff states that the policy against having condiment packets in his cell is "not usually enforced" because prisoners are allowed to order $42.00 worth of food items weekly. However, the plaintiff's general statement does not effectively dispute the defendants' assertion that possession of condiment packets in the RHU is commonly punished via conduct report. Defendant Matushak avers that a conduct report for possession of peanut butter, jelly, sugar, and/or salt packets is the most common type of conduct report given to inmates in RHU. ECF No. 41 at 4, ¶ 22.

grabbed my -- my cock. Then he went back up." *Id.* at 38. The plaintiff testified that, when Bonis went back up, the plaintiff said he was uncomfortable and thought Bonis exceeded the scope of a normal pat search. *Id.* The plaintiff testified that Bonis responded by saying "I [have] been here five years" and that he "can do what he wants to do." *Id.* at 38–39. He also said "I [have] been doing this . . . for quite some years now . . . I think I know what I'm doing." *Id.* at 39. Later, the plaintiff clarified that when Bonis made contact with his genitals, he "cuffed" his "groin area." *Id.* The plaintiff added that Bonis did this in a way that made it seem "as if he was searching . . . to make sure I didn't have anything under there." *Id.* at 40. The entire search was conducted over the plaintiff's clothes. *Id.* at 39.

A search of a prisoner's genitals or buttocks does not violate the Eight Amendment when it is conducted for legitimate penological purposes. *See, e.g., Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). However, an otherwise legitimate search can result in an Eighth Amendment violation if it is performed with an intent to humiliate the inmate or sexually gratify the defendant. *See Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). Here, even if the search occurred as the plaintiff described it, a reasonable jury could not find that Bonis intended to humiliate him or sexually gratify himself. As the plaintiff describes the search, it involved Bonis touching the plaintiff's buttocks and cuffing his genitals, two acts that the plaintiff regarded as beyond the scope of a usual pat search. But the fact that the plaintiff found these acts to be unusual does not imply that Bonis had an improper motive. The plaintiff admits that Bonis seemed to be searching "to make sure I didn't have anything under there." Oliver Dep. at 40. The plaintiff does not claim that Bonis made sexual comments during the search or laughed or otherwise tried to humiliate him. The only comments Bonis is claimed to have made related to his years of experience

23

and his belief that he knew how to perform a proper pat search. Based on this record, a reasonable jury could not find that Bonis performed the search for the purpose of humiliating the plaintiff or sexually gratifying himself. Accordingly, Bonis is entitled to summary judgment.[9]

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 31) is **GRANTED IN PART**. The court **GRANTS** summary judgment on exhaustion grounds as to Claim 1 (Maher) and Claim 4 (Matushak) and **DISMISSES WITHOUT PREJUDICE** Claims 1 and 4. The court **GRANTS** summary judgment on the merits as to Claim 2 (Friedel and Maher), Claim 5 (Weyker, Gomm, Fruehbrodt), Claim 6 (Gomm and Matushak), and Claim 7 (Bonis) and **DISMISSES WITH PREJUDICE** Claims 2, 5, 6, and 7. The court **DENIES** summary judgment as to Claim 3 (Friedel, Weycker, Maher, Gomm, Matushak, Fruehbrodt).

**IT IS FURTHER ORDERED** that the plaintiff's motion to compel (ECF No. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (ECF No. 48) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave file exhibits (ECF No. 67) is **DENIED**.

---

[9] Because I conclude that a reasonable jury could not find that Bonis acted with intent to humiliate or sexually gratify, I do not separately consider his argument that he is entitled to qualified immunity.

24

**IT IS FURTHER ORDERED** that defendant CO Hurt is **DISMISSED** from this lawsuit because the plaintiff fails to state a claim against Hurt, as explained in the Screening Order (ECF No. 17 at 6).

Dated at Milwaukee, Wisconsin, this 17th day of March, 2021.


s/Lynn Adelman
LYNN ADELMAN
United States District Judge